If counsel prepared, I think we're going to hear from Mr. Willinchuk first. Is that correct? All right. Thank you, Your Honors, and may it please the Court. This case presents some very interesting, novel issues regarding the law on pardons and what the effect of a pardon is on a live criminal proceeding. One of the last things that I said to the District Court below is that this really is, despite those exciting legal issues, sort of a matter of judicial housekeeping. This isn't a traditional Munsingware case, because in the normal Munsingware context, you would have an adverse judgment, and then when the mootness arises, you would be seeking to vacate it. But you have a judgment of dismissal with prejudice in your favor. What more do you want than that, and how does Munsingware get you anything more? Sure. I think this issue was addressed head-on in the Bancorp case, which is another case in the Munsingware line of cases. It was written by Justice Scalia. There's a discussion there about the fact that even though you have dismissal with prejudice, that doesn't terminate the case. The Court still has jurisdiction to look at the effect of mootness on the remainder of the case. Otherwise, there would be no way to reach this issue that we are asking the Court for relief on, namely to vacate the conviction. So it's really not fundamentally distinguishable either from Munsingware or Bancorp or any of those cases. But if you have a dismissal with prejudice and then just assume hypothetically that it is clear or were clear that it would have no collateral effect or a preclusive effect in other matters, does Munsingware have any applicability to you, or do you have at that point everything to which you could be entitled? I think it's the last part of what the Court just said, that that's the issue. If it were a dismissal with prejudice that were clear that it has no preclusive effect, that is basically what we are seeking in the form of a vacatur. It's that last part, clarity that the conviction has no preclusive effect. That, to my mind, is what the point of these cases like Munsingware and Bancorp is, is that to establish as a matter of law that the conviction does not spawn any future legal consequences, i.e., it has no preclusive effect. So if the dismissal in this case were to have stated no orders in this case have any further preclusive effect, again, that is what we are seeking by vacatur. What other collateral effects are you worried about? The issue here is that any conviction, and this is something that this Court has recognized in a number of decisions, even to the point of creating presumption that there is a collateral legal effect to a conviction, it can have professional consequences. As a matter of law, it can have consequences on sentencing in future cases. To my mind, the fundamental problem here is that the defendant was pardoned, and there will be no, he will never serve a sentence, there will be no direct practical consequences to the conviction. There is this bare minimum of legal consequences, of collateral consequences, that makes this case even worth talking about. But it is moot. We take the position that it's moot, just as the Court found in Schaeffer, as the Fourth Circuit found in Schaeffer. But if it had collateral consequences, how would it be moot? This is exactly the problem that we contended with, and this is the reason why we briefed an alternative, that if this case were not moot, there is a number of issues that we would have liked to raise on direct appeal. It's frankly an issue I've struggled with myself. Mr. Reconcile, you've asserted that you agree it's moot, but you think that there are collateral consequences unless we order a vacature. Those seem to be logically inconsistent premises. They are, and that's what I've struggled with, and that's the reason why, again, we have briefed it both ways. I think the only way to reconcile this issue is that in cases like Cibran or here in Ninth Circuit, I'm going to butcher the name, but it's something like Hirabayashi, there's these cases saying, okay, well, where you have collateral consequences, the case is not moot, and you should hear a direct appeal as you normally would. Those are all cases where clearly the defendant was not pardoned, and that was not the reason for mootness. They're all cases where the reason for mootness was that the sentence was served. I think the line to be drawn here is in cases where the sentence was served, and then again you have the court, whether it's this court or the Supreme Court, saying there's still legal consequences to the conviction that do not make this case moot. I think the line to be drawn is that those are cases where they're moot because the sentence was served. There's a, you know, the whole principle of mootness is a prudential principle. It's something that there's no fast and hard lines about. It's just an issue of, well, is this case worth hearing? In those cases where the sentence was served, the case is still worth hearing because aside from the collateral legal consequences of any conviction, you have the fact that somebody just served an actual sentence, and if it was a wrongful sentence, that's something the court should take a look at. I think the line to be drawn is that in this case, well, there's no sentence that's been served. There's no sentence that will ever be served. I do think there's the bare minimum of legal consequences there to make this case worth talking about or make vacatur worth talking about, but I don't think it rises to the level that the case is not moot for the simple reason that, again, there is no sentence that was served here and no sentence ever will be. So the court raises a very good issue. Again, as I say, I have struggled with this myself, which is the reason why we briefed it both ways, but I think that's the line that's to be drawn. Again, this is a case where there are legal consequences. It's worth talking about vacatur as a result of those, but it's not worth going through the full exercise of a direct appeal because, again, there's no sentence that was served here and never will be. Prudentially, it's basically a waste of time. It's a very tough line to be drawn here because, again, exactly the reason the court said it seems somewhat inconsistent to, on the one hand, look at cases in which a sentence was served that would be, as a practical matter, moot, but in this case where the sentence was not served, but there still is collateral legal consequences to say, well, we're not going to do that. We're not going to take it as if it were a direct appeal. We're going to consider it moot. That is, of course, what the Fourth Circuit did in the Schaeffer case. In spite of case law like Sibren at the United States Supreme Court saying, well, where you've got any collateral consequences to a legal conviction, the case is not moot, the Schaeffer case said, well, you know, this case very much is moot. Again, I think that's just a prudential. But in Schaeffer, the D.C. Circuit was dealing with a very, very complicated case in which it, in itself, had vacated the prior convictions. So they couldn't stand it. It was going to go back for retrial. So there was no conviction at the time that Schaeffer decides to vacate everything. That seems to me to be quite distinguishable from your case. I do want to make it clear. At the time, Schaeffer is a very complicated case. But at the time of the pardon, it was going to be reheard on bank by that Circuit Court. At that time, the conviction had not been vacated. In fact, Mr. Schaeffer had been sentenced. So in that sense, it's not meaningfully distinguishable. In fact, it's a worst case, so to speak, there, where Schaeffer had been sentenced. In fact, the last thing that he ever filed was a motion to stay his sentence pending the en banc rehearing. So I don't see that as distinguishable at all. In fact, there he's ---- It's not distinguishable because the judgment was a conviction, and you have a judgment in your favor. We don't normally apply Munsingware to vacate judgments in your favor. It's normally the party who suffered the adverse judgment wants to get rid of it and wipe the slate clean. You're not asking us to wipe the slate clean. You don't want to get rid of your judgment of dismissal with prejudice. That's why I'm having trouble. It doesn't look like Schaeffer because the judgment is the other way. Well, the adverse judgment here is the conviction. And I'm sure in Schaeffer there was also an order entered dismissing the case. So there's a conviction was entered in as a judgment against the judgment in the case is that it is dismissed. The claims are dismissed with prejudice. That's the final order that was entered. It is ordered that this action for criminal contempt is dismissed with prejudice. Is there any Munsingware case that applies in this context where the judgment is, in fact, in your favor and says that you can get more than a judgment in your favor out of Munsingware? The honest answer is I think they are all of this ilk because the adverse decision is that conviction. And in all these cases, in all the Munsingware cases, the case is dismissed. Is that judgment adverse finding of guilt, that conviction, is it embodied in a judgment? It is not because the case never reached that finality, no. Not because the judgment is that the matter was dismissed with prejudice. So that conviction was never embodied in a final judgment. Indeed, the final judgment is in your favor. Except to the extent that we still have that conviction, we still have that legal ruling, which would spawn legal consequences of a conviction. So, again, to the Court's point earlier, if that judgment had said this case is hereby dismissed and all orders are vacated, that would resolve this issue. And that's exactly what we've been seeking since day one. That's why I say this really is a matter of judicial housekeeping. Go ahead. Did you want to follow up on that? I was just going to follow up quickly. So what precisely is it that you want stricken from the records? Not even stricken, just an order saying that the conviction is vacated, so it has no further legal preclusive effect. You've already issued a motion to dismiss. What more does she have to do? What else is it you want her to do? Are there other orders that need to be dismissed? Those would be what, the findings of fact that she entered previously? Absolutely, the finding of guilty, the conviction. I'm going to change. If we're looking at a motion for vacature, what is my standard of review on that particular motion? We do agree with the other parties it would be an abuse of discretion. However, if it's an abuse of discretion, then what part of the Court's order was an abuse? It seems to me that you're arguing that it was an abuse because by simply having had this dismissal, that it automatically allows you to get where you want on vacature. Now, if I don't agree with that, supposing that I don't think there's any automatic about this at all, what law was malapplied by the District Court in trying to decide what to do on vacature? The answer is... Because, frankly, I'm not sure you're right on the fact that it's automatic. And so I'm trying to figure out what law did she malapply? Well, the answer is legally our position is that it is automatic. Well, I know that's your position, but supposing I don't agree. Supposing that I think that by filing your motion for vacature, you accepted the pardon and, therefore, it's not automatic. And, therefore, at that point, she still has vacature in front of her. What is the law she should have applied and didn't? The answer is per the Munning Square line of cases. Pardon me? Per the line of cases that the Court referred to earlier, Munning Square, you have – it is an automatic rule. If the Court doesn't find that to be the law, I do think the United States Supreme Court has made that the law. What is the law she should have applied? Because I didn't find that in your brief. Under the Munning Square line of cases, where a case becomes moot either prior to or on appeal, it's fundamentally unfair to say, hey, you were forever convicted, but you cannot appeal that. You don't have the right to a direct appeal. That's not the law that is fundamentally unfair. What is the law? That's the basis for that line of cases. I mean, I'm trying to get from you what it is she did wrong. Because after I get to what it is she did wrong, then I have to give her every deference on the facts. And we're in an abuse of discretion situation here. And, frankly, I'm having a tough time understanding what you think she did wrong, except she didn't suggest you accepted the pardon. When I say we filed the motion, you did accept. So I'm trying to figure out what it is you're really saying she didn't do wrong. The Court failed to apply United States v. Mung Singware, Incorporated, 340 U.S. 36-1915. I understand, Munning Square. You can quote that all you want. Give me the standard of review she had to use. Give me the law she had to use in trying to do that, besides just quoting me a case. I've tried to do that, Your Honor. The answer is that when a case becomes moot, either prior to or on appeal, that the court must dismiss the case and vacate all prior orders. Counsel, that seems a grossly inadequate statement of the law of mootness and vacature. There is an exception, sure. Mr. Bonner-Mall qualifies that. Correct. So there are additional factors that a court is supposed to take into account. Absolutely. And in answer to Judge Smith's repeated questions, I haven't heard you once qualify it. You simply have said when a case becomes moot, it needs to be vacated. I was right about to qualify it. That's not fair. Thank you, Your Honor. Judge Smith was trying to tease this out of you. Sure. Gave you every opportunity. I was right about to point that out, absolutely. The qualification is that whereby voluntary act of the party, a voluntary act of the party seeking vacature has caused mootness. It's not fair to vacate. So why isn't the acceptance of the pardon, the voluntary act, necessary that takes it into Bonner-Mall and out of Munsingwell? Because pardons are not accepted as a matter of law. Pardons are what? They are not accepted as a matter of law. They don't have to be accepted. They are not accepted. Well, did Mr. Arpaio accept his pardon? It's relevant as a matter of law under the Biddle case. Relevant? Absolutely. The Biddle case says — Does Wilson say then the Arpaio has to accept the pardon? Biddle overruled Wilson. Biddle is a much more — it's the most recent case we've had to discuss here. Biddle doesn't change the general rule. All Biddle says, we're of the opinion that the reasoning of verdict is not extended to the present case where a prisoner has a death penalty imposed. Biddle didn't even involve a pardon. How could it overrule Wilson? It did involve a pardon. It did involve a pardon, Your Honor. Commutation of the sentence is different. Well, clemency pardons operationally are the same in this respect. The Court specifically said that it will be imposed in the teeth — against the will of the defendant. It was a case where the defendant actually argued for tactical purposes. He didn't want a commutation. Well, your client, you filed the motion, and the motion was, we got a pardon. As a result of this pardon, if you want me to read the language, you now should vacate. That's an acceptance. Again, Biddle is very clear. It doesn't matter whether the defendant accepts or rejects is not the issue. It is imposed in the teeth of his will. So your argument is that pardons cannot be rejected at Biddle. Correct. And your argument then rises or falls on whether we think Biddle overruled Burdick and Wilson. I think that's fair. I think Biddle stands to the proposition that pardons do not need to be accepted or rejected. Pardon within the meaning of Wilson. Say again. Because you pleaded the pardon within the meaning of Wilson because Wilson rested on the fact that the pardon had not been invoked and presented to the court. You presented it to the court and asked for relief based on the pardon. So within the meaning of Wilson, you pleaded it and accepted it. I think that's a fair statement, but I don't think that that language in Wilson has any meaning anymore, whether or not the defendant pleads it, whether or not the defendant accepts it. Again, I think Biddle is very clear that it's done by executive fiat and that once it happens, it happens regardless of whether the defendant likes it or not. When we filed a motion to dismiss, that is bring it to the attention of the court. Frankly, I did that just as a practical matter to make sure it was on file. And in motion to dismiss, we did ask for this vacatur. Again, it was a way of saying to the court, we think this is the legal effect of a pardon, and that's what we're still here about today. So if, in fact, I don't believe your argument as you've made it has ability to fly, is there any other argument you can make about vacatur? I think as a matter of equity, which is what vacatur arises out of, it's not fair to say that he's forever convicted but can't appeal that, and that's the basic problem here. But the problem I have with that argument is if it's a matter of equity, why didn't one argue equities to the court? That is what we're arguing. Vacatur is an equitable relief. You argued a straight legal deal that if you get a pardon, you automatically get the vacatur. That was your argument. I read your brief. That is the legal argument, correct. But what other argument did you make? I just said it. I didn't see any, if you did. Again, it's an equitable argument, which we have stated many, many times, which is that it's not fair. I don't want to repeat it again, but it's not fair to say you're forever convicted but cannot appeal that, and that would be the effect of leaving the court's ruling as it is, simply dismissing the case with prejudice but without vacating that order. It leaves it there, final, with preclusive effect, and that's the basic problem here. I would like to reserve my remaining time for rebuttal. Thank you, Mr. Blanchard. Mr. Pearce. May it please the Court, James Pearce for the United States. The presidential pardon mooted the verdict finding defendant Joseph Arpaio guilty of criminal contempt. Though not automatic, vacatur following mootness is the preferred disposition and is appropriate here for three reasons. First, the pardon precluded meaningful appellate review. Second, the pardon in this circumstance amounts to happenstance or vagary of circumstance or recognized reason for vacatur under the Munsingware cases. And third, the pardon was a result of unilateral action by the party that prevailed below. Is there any case that you're aware of that applies Munsingware in a situation where the party who's worried about preclusive effect has a judgment in its favor? Well, I think that actually conflates two issues, Judge Collins. The question is, what moots the case? Here it's the pardon. I think you can also say the dismissal with prejudice essentially establishes the pardon on the record. And then the separate question is, is vacatur appropriate? Now, you agree that if there's any live collateral consequence, then the case is not moot? Yes, we do. And we believe there are no live collateral consequences. There are no live collateral consequences. And he has a judgment in his favor. What work does the Munsingware doctrine have to do at that point? Well, the Munsingware doctrine answers the question or helps establish whether or not vacatur is appropriate. I think it's odd in this case. And I think questions to Arpaio are fair. Why are you seeking this additional relief? Because a pardon and vacatur perform essentially the same function. They nullify the results, the legal consequences of a conviction. But if there are no legal consequences of the findings of guilt, because if there were legal consequences, the appeal wouldn't be moot. So if there are none and he has a judgment in his favor, the whole purpose of Munsingware, which is to avoid preclusive effect from a party who didn't get an appeal, just doesn't apply. There's no basis for applying Munsingware, is there? No, I don't think that's right. I mean, I think Munsingware is still concerned with whether or not the case should be vacated or just left on the books as it is. And you run through the various factors, meaningful appellate review, whether the party that caused the mootness did it through voluntary action, and these factors. And to answer Judge Smith's question, I want to — Maybe you better answer his first. Fair enough. In Van Corp, it says, We explain that vacatur, quote, clears the path for future relitigation of the issues between the parties and eliminates a judgment review of which was prevented through happenstance. You know, it's to wipe the slate clean. But that's not what happened here, not what anyone thinks should happen here, that the slate should be wiped clean. He has a judgment in his favor. If there's no preclusive effect from these interlocutory orders, what's the work for the Munsingware document? Well, to be clear here, or so I'm clear, the dismissal with prejudice is not before this Court. That was entered on October 4th of 2018. That's not the order that is on appeal at this Court. The order that's on appeal is the subsequent order that issued just over two weeks later, the question of whether to vacate or not. And that is the question that this Court faces. Interlocutory orders, not to vacate the judgment. Well, there is no judgment, but to vacate the criminal adjudication of guilt. It is ordered that this action for criminal contempt is dismissed with prejudice. That's not a judgment? It's an order that I think ends the prosecution, moots the prosecution, but it does not go back and say, and the criminal finding of guilt is vacated. But the judgment was entered based on that order. There was no subsequent judgment entered at all. There is the order that dismisses the case with prejudice, moots the case. I understand. So she makes that order in her decision, are you saying because it didn't have another judgment, another paper judgment entered, that it isn't the same? No, I think it is the functional equivalent of a judgment. That's correct. I guess that's why I was interested in what you were going to answer to my colleagues in question. I don't know what the collateral consequence is here, so therefore I'm having a tough time understanding why we have anything more in front of us. Well, you don't as a matter of the mootness question. You don't as a matter of any of the alternative arguments that Mr. Arpaio raises and that the special prosecutor also addresses. The question simply is a traditional Munsingware analysis. And to answer the question of how to do that. Why is it Munsingware? His question is very simple. Why is it Munsingware if you already have everything you wanted out of a Munsingware done by dismissal with prejudice? Because dismissal with prejudice doesn't vacate. It is not the vacateur of the criminal adjudication of guilt. It is not vacateur of the guilty verdict. I think simply to — and this is what — I mean, this is a question ultimately for Mr. Arpaio, and I understand his answer to be vacateur of the guilty verdict, arguably also vacateur of the charging instrument, which is what this Court does under the abatement doctrine, for example. Now, I want to address the question about how did the district court abuse its discretion. I would love to find out because nobody suggests the district court abused its discretion, including you. We did. Where? In our brief before this Court you're talking about. Look, did you ever say to the Court, Madam, you have a discretionary decision to make here, and these are the factors you ought to consider. I'm not sure below whether the government in precisely those terms. I'm sure. I didn't see a thing in there. I read the record. And I think that it was on — rested on Schaeffer. So then, if it's an abuse of discretion in front of me, what are the legal standards she should have used that she did not use? Okay. So there are three. First of all, and I anticipate that the Court will push back on this, but by not applying the Munsing Ware and Bank Corp., and in particular, absence of meaningful appellate review, the fact that this was happenstance, and the fact that this was unilateral action by the prevailing party. I agree that that was not presented by the government. That's not in any of the cases. You want me to read what the standards are in the cases? That comes straight from — Dilley. I'm going to read you what Dilley says. Dilley says, she's supposed to review the consequences and attendant hardships of dismissal as well as refusal to dismiss. She's supposed to review the competing values of finality of the judgment and the right for re-litigation of the unreviewed disputes. She's supposed to review that the appellant did not intend to avoid appellate review and to have the district court's order vacated. If I go to other cases, we can look at the motives of the party whose voluntary action mooted the case. None of those were explained to her, and I wonder why it is then I should even say there is an abuse. The issue was not presented to her. It's not in front of me. Nobody's really said that in front of me. Why don't I just forget it then and go on? Well, again, respectfully — Respectfully, it's waived in my view. Well, by presenting it to this Court — Did you present this to me? We argued under Munsing Ware and Bancorp, which, as Supreme Court cases establish, and there are plenty of cases in this Court that also repeat the various principles that I've just mentioned. That's our first reason for why the district court abused its discretion. The second is, its treatment — Saying that, saying that, all you're saying is, once a pardon, they should have done it. That's the only argument you made below and the argument that Del Pao made below. That's not true, Judge Smith. The other arguments are relying on Schaeffer. And what the Court said about Schaeffer, the district court said, well, in Schaeffer, there was already appellate proceedings happening, whereas Arpaio hadn't filed a notice of appeal. And additionally, that the question of legal guilt was resolved in Arpaio where it hadn't been in Schaeffer. Both of those are incorrect or rather not legally significant. This Court in Oberland, in Tapia Marquez, in Payton has all said it is the availability of appellate review, not the fact that someone has noticed an appeal. And so, I think that's the only argument that's being made.    Roberts. Yes, Your Honor. Counsel. Counsel, before you're done, do you agree with Mr. Arpaio that Biddle overruled Wilson and Burdick? No, absolutely not. I think that there are two different ways to see Burdick or there's a — Burdick doesn't — Doesn't that change your analysis on the happenstance? Doesn't that mean that Arpaio has accepted the pardon? Yes, it does. And in which case, it's not pure happenstance. It did require an affirmative act or some kind of acquiescence, at least, on Arpaio's — on Arpaio's part. I think those are two separate questions, Your Honor. I think the one question is, is a pardon the kind of thing that is an expected part of litigation? So take the Payton example. In Payton, the government loses an appeal on a suppression question and then it dismisses the case. And then the Court says, well, that's not happenstance. That kind of thing happens all the time, a dismissal following, which moots the case, a dismissal following a loss. That's a regular part of litigation. A pardon showing up in the middle of litigation, that's happenstance. Now, it's even more so happenstance under the factual record here because Arpaio didn't actually apply for and the record is silent on whether he lobbied for it. So the question of happenstance is separate from acceptance. I see my time is up. I would like to answer the Burdick-Biddle question, but I'm more than happy to sit down. I actually have one further question. Does the government adhere to its position that the special prosecutor was improperly appointed in this case? Yes. We do, Your Honor. The same position we've taken before this Court and the Supreme Court. Would the Court like the answer on Burdick v. Biddle or should I sit down at this point? I think we understand the argument. Okay. Thank you. Thank you, Mr. Pearson. Mr. Caldwell. May it please the Court. Christopher Caldwell appearing in my role as special counsel appointed by this Court. The central dispositive issue for this Court is whether the district court abused its discretion in denying Mr. Arpaio's motion seeking the extraordinary remedy of vacator for all orders in his criminal case, including the contempt order itself. The correct answer to this is that the district court did not abuse its discretion. Where did the district court, if it did not abuse its discretion, discuss the legal, if you will, values that it needed to discuss, which were the consequences and attendant hardships of dismissal or refusal to dismiss, the competing values of finality of judgment and the right to brief litigation of unreviewed disputes, the motives of the party whose voluntary action mooted the case? Where did she discuss that? Your Honor, the answer to that is while the bulk of the order addressed the legal issue, which is how it was presented by the parties, the district court did discuss those issues. Where? Footnote 2 and footnote 3 of the order. Footnote 2? I mean, I happen to have that decision in front of me. So what part of that does footnote 2 address? Your Honor, let me start with footnote 3, because I think that's actually the one that's more directly on point with the question asked by Your Honor. Footnote 3 begins with, at oral argument, defendant raised the possibility raised the possible preclusive effect of the court's rulings as an additional reason to vacate all orders in this case. The court went on to say that this was both a speculative concern, but the law actually counsels against further nullification on this basis. But it seems to me that what she's doing there is she is suggesting her idea, which goes throughout the opinion and suggests that, guess what, this takes away no question that he has no sentence, but there is nothing that suggests that we ought to get rid of this conviction. That is the way this whole, if you will, order reads. That was her legal conclusion, which was exactly that's the way it was going to happen. If I were going to weigh the equities, I would want to look at that, and I wouldn't say, well, now just look at this equity. Let's look at the consequence. Look at the refusal. Let's look at the finality. Let's look at the relitigation. I mean, I do not know how it is that that does any more than says she was of the idea that this particular pardon only did one thing, and that was get rid of any sentence as it relates to this. And you've got it done, and that's all you're getting. Your Honor, I think, and now I come back to footnote 2, because I think that Okay. I looked at footnote 2. What the district court said there This is about a writ of mandamus to require a jury trial. I'm sorry, Your Honor. I mean footnote 1. My apologies. My apologies, Your Honor. And in footnote 1, what the court is talking about, what the court addressed is whether it is, whether the guilt, the finding of guilt, the order of, you know, establishing guilt should remain, and cited Burdick for that proposition. A pardon carries an imputation. If you look at what I suggest, which I think her appalled opinion leads to that result, the United States Supreme Court originally signaled in Dikna that presidential pardoning may have an expunging effect, and then she goes on to say why it doesn't. So she's saying this rule I have in my mind is that a pardon does one thing. It gets rid of any sentence. But there's nothing further. It doesn't really look at the now I have a motion for vacature. It's equitable, and frankly, I think it's equitable even if it's automatic. I think there's equity involved in it. And with equity, we're supposed to be determining all of these different factors and weighing them out. And therefore, at that point, I'm saying to myself, how do I get to the fact she even knew what she was supposed to do, plus weighed it? Your Honor, let me answer that specific question. The fact that she knew what she was supposed to do was specifically presented to her in the amicus briefs, while it wasn't addressed by either of the parties. In the amicus brief that was submitted by the Melendrez plaintiffs, which the district court said at the hearing it had considered and reviewed, it set forth the bank – it was also known as the Bonner-Mall test. The cases call it both. And it talked about those factors and how they should apply in this case. I would also note that at the argument on the motion for vacatur, Mr. Keller, who was the Department of Justice attorney who was arguing the case, said, obviously there are a variety of options well within the court's discretion. That's in tab 17, volume 2 of the supplemental excerpts of record at page 530. I would also note that the language used by the district – I don't want to stop you because I want to understand what you're referencing every time, even if you have to give me another note about it hereafter. But what I'm trying to do, I look to see if there was a hearing whereby she talked about what she was doing. There isn't. So the only thing I've got is this record, four pages long, which says what she thought about, what she did, and why. And I'm trying to figure out with that how in the devil I can come to the obvious conclusion she knew what she was supposed to be doing and she applied the factors and weighed them. Well, and I come back to the fact that in its docket number 233 at the court below, the brief submitted by the Melendrez plaintiffs that laid out the Bancorp test and factors. And also footnote 3, where she's talking about the preclusive effect of the court's rulings, that's exactly what the Dilley court said she was supposed to be considering. She was considering it even though neither of the parties raised the issue directly. And I would also note, Your Honor, that her operative language, the district court's operative language here on page, on line 7 of the fourth page is the court declines to order any further relief. That represents an exercise of discretion in terms of how the court framed its ruling. Do you agree that his appeal is moot? We do agree that this appeal is moot, Your Honor. Excuse me? Yes. And do you also agree that there are no collateral consequences from the finding of guilt? Yes, Your Honor. We did not brief that in our brief because we thought within my role as special prosecutor here, I was hesitant to go there. But the Department of Justice has very clearly stated its position on that issue at pages 14 and 15, and footnote 2 of its brief. So at this point, I don't think there's any dispute about the fact that there are no collateral consequences. Mr. Arpaio himself agrees with that, that the case is moot. As he says at page 17 of his brief, appellant does not disagree with the United States or even with the special prosecutor that the court need not reach the merits of the underlying appeal because of mootness. That's in his reply brief. So all the parties here agree that it's moot. And in that situation, as Your Honor has pointed out, I don't see how munsingware comes into play here. It doesn't come into play for a variety of reasons, including the fact this is not happenstance. This was a voluntary action in accepting the pardon. And there's also no adverse judgment against Mr. Arpaio to be vacated, which would have the possible preclusive effects that are motivating the munsingware decision. So this is the opposite of happenstance. Happenstance is when there's a variety of situations in the cases when somebody gets moved, coincidentally, from one prison to another or when the party dies. This is the opposite of happenstance because it's a situation where Mr. Arpaio chose to accept the pardon. He also, by the way, in the Melendrez brief, docket 233, there's also evidence in the record concerning the letter written by Mr. Arpaio's lawyer, counsel in this case, Mr. Goldman, asking for the pardon to be issued and confirming that Mr. Arpaio would accept it, which, of course, he did by filing it with the district court three days after it was issued. And in that letter, Mr. Arpaio was urging the president to act quickly so that he would avoid the sentencing and avoid the possibility of a perp walk. And that's the language of Mr. Arpaio's attorney to Donald McGahn, the president's counsel. Mr. Arpaio got what he wanted from the pardon. There's nothing inequitable or unfair about this result. He wasn't sentenced. He was relieved of any punishment. But relieving a party of punishment, as this court said in the Buenostro case last year, when a pardon does not do away with the finding of guilt, it relieves the pardon party of punishment. And that is exactly what happened here. The district court properly exercised its discretion in refusing to grant the extraordinary equitable remedy of vacator. Your Honor, if you'd like, I could address the Burdick versus Biddle issue, but I think it's quite clear, and as the Department of Justice has also agrees, Biddle was not overruled by Burdick. Biddle was a situation involving a commutation of a death penalty. And as Biddle says, a defendant can't force the state to hang him. And Biddle was very careful not to extend the reasoning of Burdick and basically went out of its way not to overrule Burdick. As I understand Mr. Arpaio's argument and to a large extent the Department of Justice is now relying heavily, if not very heavily, on the Schaefer case. But as has already been mentioned, Schaefer is distinguishable in two very important respects. First, Schaefer involved a situation where the D.C. Circuit was making its own determination in the first instance of whether to vacate orders in a case. It was not an abuse of discretion review. It's also clear that Schaefer expressly refers to the equitable analysis in U.S. Bancorp. The language, the operative language in the per curiam decision is that vacater here is just and appropriate, see U.S. Bancorp. So it's not an automatic rule by any means. And I would also note that the decision of the D.C. Circuit in Schaefer, frankly, represents a departure from the procedure that's been mandated by this circuit that the determination of whether a district court order should be vacated is best made by the district court itself and, if necessary, a remand. That's, of course, what occurred in U.S. v. Tapio Marquez and is the procedure that was outlined by this court in where, as Judge Smith, as you pointed out, the job on remand was for the district court to consider in light of the attendant consequences and attendant hardships of dismissal or refusal to dismiss and the competing values of finality of judgment and right to re-litigation. And here the way... Let me interrupt you. Supposing I don't think she applied the right standard to review here. Is this harmless error? It's harmless error in the record. Think about what harmless error is. No, I'm trying to think about how harmless error applies in this situation, Your Honor. I'm not sure. I don't think it's... I've been thinking through this. So I want to make sure that you understand the confines of harmless error. Certainly it's a threshold matter. I'm not agreeing it's error. I'm sure you probably haven't thought about it. So I'm just trying to make sure you... I would... ...know the confines thereof. Your Honor, I think I would approach the issue from the perspective of this court can affirm on the basis of what is in the record. And it is... The record shows both that the equitable balancing test and factors were presented to the district court for consideration. The Department of Justice expressly said in the oral argument that the court had discretion, a variety of options well within the court's discretion in ruling on the motion. And while admittedly it's kind of in passing in footnotes because the issue hadn't been presented squarely by the actual parties to the case, the district court did consider the issues that it had been directed to consider by the Dilley decision. If it didn't lay them out in greater detail, that is... I don't think that's error. It means that the judgment would need to be... It certainly wouldn't mean that the judgment needs to be reversed. I have a question about the Schaefer case. One thing that's unusual about Schaefer is that it recites the Munsingware rule and says this court generally vacates the district court's judgment, vacates any outstanding panel decisions and remands to the district court with directions to dismiss. But then when it finally gets to the bottom line answer, it says we hereby vacate all opinions, judgments, and verdicts of this court and the district court. So it didn't just stop at the judgment, it wiped out the interlocutory orders that preceded it. How do you distinguish that part of the case? Your Honor, I have to say, it puzzled me in the same way. But I think that decision can be understood and make sense in terms of the D.C. Circuit's exercise of discretion under U.S. Bancorp because of the difference between this case and that, the Arpaio case and the Schaefer case, in terms of whether there was an extant criminal conviction at the time that the pardon was received and at the time that the vacator issue was considered. In Schaefer, the bribery count had been, judgment had been entered in the defendant's favor after there was a motion for judgment on acquittal that was affirmed on appeal. And with respect to the meat inspection count, which was the second count at the time that the issue was considered by the court, the district court's motion for new trial had been reinstated. So there was no extant criminal conviction at that time. In this case, there was not only an extant criminal conviction, but there was a confession of guilt associated that accompanied the acceptance of the pardon. And so in looking at how you would expect a court to exercise its discretion, you would certainly expect a different, it makes sense that the court would be more inclined to wipe the slate clean if the issue was presented at a time that there's no conviction and no confession of guilt. So that's my best ability to understand because obviously the Schaefer is a per curiam decision. It doesn't contain any analysis of why it decided to wipe the entire slate clean. Did Schaefer remand it for entry of a judgment of dismissal with prejudice? I'm sorry? Did Schaefer remand the case for entry of a judgment of dismissal with prejudice? Your Honor, I'd have to look at the decision, whether it was remanded for entry or whether the district court, I think they directed the district court to do that. Dismiss the case as moot. As moot. Is that a dismissal with prejudice or is that something else and maybe that accounts for why the orders got wiped out? That could also account for it, Your Honor, because a remand for dismissal as moot may or may not be a dismissal with prejudice. Based on that language, there was not direction that the case should be dismissed with prejudice, whereas in this case, what Mr. Arpaio sought and was granted by the district court was a dismissal with prejudice. I would also say, Your Honors, that in looking at the equitable factors, which may not have been discussed by the district court in its order, but were certainly part of the record in the district court, this is a markedly different case from Schaefer and, frankly, a different case from any other case that the parties have identified. Because when you look at the other U.S. Bank Court factors of the interest of the public and the interest of the courts, all of those factors here counsel in favor of affirming the district court's order. Unlike Schaefer, the underlying crime here was contempt of court. Schaefer certainly did not involve a situation where the defendant had publicly and brazenly announced his intention to violate a court order. Those are both factors where the interests of the court were implicated. And from the perspective of the public interest, unlike Arpaio, the defendant in Schaefer was a private citizen, not a public official, and the public interest in terms of the victims  to the court in the brief that they filed opposing vacator. This case really stands alone in that we believe Judge Bolton's order properly preserves the power of the executive branch to pardon a criminal defendant while avoiding punishment for the conduct. And my final point would be there has not been a single case cited by any party to this appeal where a district court's order denying vacator of a criminal conviction has been reversed. The egregious facts of Mr. Arpaio's contemptuous conduct, which are outlined very succinctly in the DOJ's brief, do not make this an appropriate case for the first decision by a federal appellate court holding that a district court abused its discretion in refusing to vacate a criminal conviction. Thank you. Mr. Willenshack. Thank you, Mr. Caldwell, and thank you for your acceptance of the appointment by the court. Well, you heard your opposing counsel. Everyone agrees that there are no collateral consequences and that you have a judgment in your favor of dismissal with prejudice. How is it, then, that what you're seeking doesn't amount just to expungement? Thank you, Your Honor. And that's the first point I was going to take up because the fact is if the court finds that, as exactly what I think you're saying, that if the dismissal of prejudice has no – if as a result of the dismissal of prejudice the conviction has no preclusive effect, that really is what we're seeking. And if the court finds as a matter of law that's what the dismissal of prejudice accomplished, honestly, in our minds, that's equivalent to a vacateur. That is all we are seeking here. There may be some distinction there, which I think this is a dialogue here. I understand what the court is thinking, the direction it's thinking in. There may be a distinction here in terms of cases in which a vacateur of the judgment is sought and a vacateur of orders prior to the judgment or, in this case, effectively the judgment is sought. So I think we're really not talking across purposes there. Again, if the court were to find that the dismissal of prejudice already accomplished, if as a result of the dismissal of prejudice the conviction already has no preclusive effect, that really is functionally equivalent to what we're seeking here. The problem we've had is that the district court did not find that. As far as we can tell on the record we have, this is a conviction that is final and will be there forever, and we are forever unable to appeal, and that is the basic problem here. If the court finds that on the state of the record that we have that's not the case, that really does solve the relief sought here. Again, that's why I say this really is a matter of judicial housekeeping, being clear as to whether that conviction is final, unappealable, appealable, or what the status of that is. I see I've got three seconds left, so I'll conclude with that. Thank you, Mr. Willinchuk. We thank all counsel for the argument. The case of United States v. Arpaio is submitted. That completes the oral argument calendar for the day. The court stands adjourned for the day. All rise.
judges: Bybee, N.R. Smith, Collins